UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TADD S. MARTIN,

    Plaintiff,

    v.                                                    Case No. 3:21-CV-392 JD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Tadd Martin appeals the denial of his claim for disability insurance benefits and supplemental security income. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings consistent with this opinion.

### A. Background

Mr. Martin filed applications for disability insurance benefits and supplemental security income on September 4, 2019, alleging disability beginning on June 9, 2017. Mr. Martin was previously found to be disabled for the period from August 25, 2014, through January 6, 2016. His date of last insured was June 30, 2024. Mr. Martin's application was denied initially, on reconsideration, and following a hearing before an Administrative Law Judge ("ALJ"). The ALJ found that Mr. Martin had some severe impairments but that he had not been disabled since June 9, 2017. The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner.

**B. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

### C. Standard for Disability

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the national economy.

*Id.; Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. §§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national

economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### D. Discussion

Mr. Martin raises numerous arguments in favor of remand. He begins by generally challenging the ALJ decision for relying on "cherry-picked evidence" and failing to provide an accurate and logical bridge between the record and the ALJ's conclusions. Mr. Martin also raises four specific arguments: (1) the ALJ erred in determining the credibility of his testimony, (2) the ALJ improperly submitted her lay opinion for those of the medical sources, (3) the ALJ erred at Step Three in concluding Mr. Martin did not qualify for Listings 12.04, 12.06, or 12.15, and (4) the ALJ's RFC is not supported by evidence and lacks a logical bridge. The Court agrees with Mr. Martin's first and fourth arguments and will remand this case. Mr. Martin's remaining challenges can be addressed on remand before the ALJ.

The ALJ did not establish a logical bridge between the evidence and her credibility finding. This in turn means she did not establish a logical bridge in her RFC analysis which downplayed or omitted Mr. Martin's subjective reports of his symptoms. The Court will begin its analysis with the credibility finding and then discuss why that undermines the ALJ's RFC analysis.

As the ALJ is in the best position to determine a witness' truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310–311 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the

individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p (superseding SSR 96-7p); *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record."). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Pepper*, 712 F.3d at 367; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676.

Mr. Martin argues that the ALJ's credibility analysis suffers from three defects: (1) the ALJ, in merely summarizing the medical record, did not establish a logical bridge between that evidence and her conclusion that it was inconsistent with Mr. Martin's reports of his symptoms, (2) the ALJ afforded different credibility to different statements by Mr. Martin without explaining why he was credible on some topics but not others, and (3) the ALJ assigned too much weight to the fact that Mr. Martin had returned to working out at a gym without considering his limitations in exercising (DE 13 at 7–8). The Court agrees with Mr. Martin's first argument and thus remand is necessary for the ALJ to conduct the requisite analysis.

With respect to Mr. Martin's testimony about the limitations resulting from his symptoms, the ALJ failed to adequately build a logical bridge in evaluating Mr. Martin's credibility. First, the ALJ provided the often-criticized boilerplate language to summarily discount all of Mr. Martin's subjective complaints, by stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. at 27).

This generic language does not explain or direct this reviewing Court to the information relied on by the ALJ in making her credibility determination. *See Pepper,* 712 F.3d at 367–68; *see also Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012) (noting that an ALJ's finding a claimant to be 'not entirely credible' fails to inform the court of the specific evidence considered in determining the claimant's credibility and fails to link the ALJ's conclusions to the evidence in the record). However, the ALJ's mere use of boilerplate language does not automatically undermine the ALJ's ultimate credibility conclusion. *Pepper*, 712 F.3d at 367–68. If she otherwise points to the information that justifies the credibility determination, that may establish the requisite logical bridge. *Id.*

In this case, the Court is unable to conclude the ALJ sufficiently directed it to information justifying her determination and a remand is necessary. The discussion following the boilerplate language is an extensive recitation of Mr. Martin's medical history and the associated evidence in the record (R. at 27–31). What is lacking from this discussion, however, is any analysis connecting the evidence with Mr. Martin's credibility regarding any given symptom, such as a simple comment whether any given piece of evidence supports or detracts from the credibility of his claims. The mere pairing of a conclusion and a recitation of Mr. Martin's medical history is not sufficiently specific or clear for the Court to determine how the ALJ evaluated Mr. Martin's symptoms or whether she constructed the requisite logical bridge between her conclusion and the evidence. *See Craft*, 539 F.3d at 677–78 (finding that an ALJ merely reciting medical record information was insufficient to craft a logical bridge); *see also Zurawski*, 245 F.3d at 887 (remanding a credibility finding when the ALJ failed to explain what the inconsistencies were between the objective medical evidence and the plaintiff's description of his daily activities).

The Commissioner's response brief does not meaningfully address this lack of analysis. Rather it briefly asserts that because the ALJ noted Mr. Martin's claimed symptoms, provided the boilerplate limitation language, and then "discussed" the medical evidence at length, the decision is not "patently wrong" and should thus be affirmed (DE 14 at 20–21). This characterization overlooks the fact there was no discussion of how the medical evidence related to Mr. Martin's credibility. As such, the Court finds it unpersuasive.

This credibility determination does not qualify as harmless error as the ALJ's mishandling of Mr. Martin's testimony undermines her latter RFC analysis which downplayed or omitted evidence derived from Mr. Martin's testimony. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (An error is harmless if the ALJ would have reached the same result even without the error).  Mr. Martin testified that he is able to sit for ten to fifteen minutes at one time and stand for fifteen to twenty minutes at a time and needs to frequently adjust position to manage his pain (R. at 58–60). He also testified he kept his leg elevated above his heart for twelve to sixteen hours a day (R. at 63–64). This need to frequently shift positions was described by the ALJ to the Vocational Expert ("VE"), who concluded that such movement would result in too much time off task at a job and preclude the individual's ability to work (R. at 74–76). Separately, the VE testified that the need to keep a leg elevated at waist height or higher at all times would also preclude an ability to work (R. at 76). The ALJ did not discuss this testimony by the VE in her decision and concluded her RFC by finding that Mr. Martin is able to perform sedentary work (R. at 26–31).

While ALJs are not required to use any "magic words" in formulating an RFC, their assessment must incorporate all the claimant's limitations supported by the medical record including limitations in concentration, persistence, or pace. *Lothridge v. Saul*, 984 F.3d 1227,

1233 (7th Cir. 2021) (citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Further, while the ALJ need not address every piece of evidence in the record, the ALJ must not ignore a line of evidence that contradicts her findings. *Zurawski*, 245 F.3d at 888 ("[A]n ALJ may not ignore an entire line of evidence that is contrary to her findings, rather she must articulate at some minimal level her analysis of the evidence to permit an informed review.") (internal quotations omitted).

Here, the ALJ failed to adequately discuss the evidence regarding Mr. Martin's inability to stay on task, which is not harmless, as the VE testified that there are no jobs which permit the amount of time off task Mr. Martin described in his testimony (R. 58–60, 63–64). The ALJ acknowledged Mr. Martin has numerous leg and back issues which support his description of his symptoms and are supported by the medical evidence in the record, including neuropathy, degenerative disc disease of the lumbar spine, complex regional pain syndrome in his left leg, and left foot drop (R. at 23, 27–29, 51–64 388–89, 474–77, 494–97). The ALJ's failure to discuss these symptoms and their effects on Mr. Martin's ability to remain on task during a workday left the RFC finding "altogether uninformed by considerations of off-task time or unplanned leave" which precludes meaningful review by this Court. *Crump*, 932 F.3d at 570.

While the ALJ does include a host of additional restrictions in her RFC, such as "no kneeling or crawling", it does not contain any regarding a need to shift positions, keep his leg elevated, or have time off task (R. at 26). Further, the evidence the ALJ did discuss, including how Mr. Martin is able to perform some daily activities such as occasionally grocery shopping and recreationally visiting a gym, is insufficient to sustain the RFC (R. at 25, 28). A claimant's activities of daily living are an appropriate factor for an ALJ to consider, but the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work

full time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (internal citations omitted). In considering a claimant's daily activities, ALJs are particularly required to acknowledge the limitations inherent in performing those activities. *Childress v. Colvin*, 845 F.3d 789, 792–93 (7th Cir. 2017). The ALJ's analysis does not clearly provide such acknowledgements. The ALJ noted Mr. Martin only gets groceries "once in a while" but does not elaborate on what that means or how it impacts his ability to regularly perform work related tasks, and the ALJ simply does not acknowledge the scope of Mr. Martin's exercise or consider how those abilities reflect on his ability to perform work (R. at 25, 28).

The Commissioner's response brief discussing the RFC does not meaningfully address these omissions. Rather, it notes the ALJ is not required to discuss every piece of evidence, restates the evidence the ALJ considered, argues this provides a sufficient logical bridge for her conclusion, and dismisses Mr. Martin's arguments as an invitation to reweigh the evidence in the first instance (DE 14 at 9–15). While the Commissioner is generally correct that an ALJ need not discuss every piece of evidence in the record, that does not give ALJs license to cherry pick by disregarding evidence which is contrary to their conclusion without explanation. *Zurawski*, 245 F.3d at 888; *see also Lothridge*, 984 F.3d at 1234–35 (ALJs need to confront evidence that claimants cannot meet benchmarks for being on task and present at work). Further, the Commissioner's brief echoes the ALJ's acknowledgements of Mr. Martin's numerous conditions and his reports of his limitations but does not explain how or why the ALJ discounted those conditions (DE 14 at 20).

Accordingly, reversal and remand is appropriate for the ALJ to enter a new decision with the requisite credibility and RFC analysis. *Pepper*, 712 F.3d at 367 (internal citation omitted).

**E. Conclusion**

For the reasons stated previously, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: April 14, 2022

           /s/ JON E. DEGUILIO
           Chief Judge
           United States District Court